Charles N. Williams, Respondent, v. Nathaniel C. Boynton, as County Clerk of the County of Essex, Appellant.

1. Public Officer — Injunction — Threatened Injury. Where a public officer, by the order of a superior authority, the regularity of which it is not his business to investigate and which it is his official duty to obey, has been commanded to do an illegal act, the fact that he has not threatened to do such act is no bar to the maintenance of an action restraining its commission.

2. Officer de Facto. The doctrine that the acts of one who is not an officer *de jure* may in certain cases be upheld upon the ground that he is an officer *de facto*, does not apply where his official action has been challenged at the outset and before any person has been or can be misled by it, and where no rights have as yet accrued upon its faith, either of a public or private character.

3. Officer de Facto — Color of Office. To constitute an officer *de facto* there must be either some appointment or election which might be supposed to be valid, or, possibly, such an occupation of the office without dispute and with general acquiescence as would reasonably lead to the inference that his authority existed, although not at the time known.

4. Changing County Seat — Local Bill — Constitution. A special act of the legislature (such as chap. 148, Laws of 1893, relating to Essex county), which undertakes to validate an illegal and wholly unauthorized resolution of a board of supervisors, locating or changing a county seat, is a local act; is an attempt to do indirectly what cannot, within the provision of the Constitution (Art. 3, § 18), be done directly by the legislature, and, consequently, is unconstitutional and void.

Reported below, 71 Hun, 309.

(Argued October 24, 1895; decided November 26, 1895.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made September 28, 1893, which reversed a judgment in favor of defendant dismissing the complaint upon the merits entered upon a decision of the court on trial at Special Term.

This was an action brought by a taxpayer and resident of the county of Essex for the purpose of having certain proceedings of the board of supervisors of that county for the removal of the county seat declared illegal and void, and

restraining the defendant from any official acts for submission
of the question to the electors as illegal official acts and a
waste of public funds.

The board of supervisors of the county of Essex, consisting
of eighteen members, in December, 1892, by a vote of ten to
eight, passed a resolution changing the site of the county
buildings.

The chairman of the board, upon the ground that two of
the members, one named Sullivan and the other Moynehan,
had not been elected supervisors, decided that the resolution
was lost; the decision of the chair was overruled by the same
vote, and subsequently by the same persons another resolu-
tion was passed directing the former resolution, and notice
that the question of such removal would be submitted to the
electors, to be published.

After the town election in the town of Minerva, in March,
1892, the town canvassing board gave a certificate of election
to Sullivan, although his opponent, Bradley, had a majority
of the votes cast. A mandamus was issued requiring such
board to issue a certificate of election to the candidate having
the greatest number of ballots cast for him. The order
directing the issue of such mandamus was, upon appeal,
affirmed by the General Term, and in June, 1892, by the
Court of Appeals.

Thereafter the town board of canvassers issued a certificate
of election to Bradley, who duly qualified, and by an order of
the court Sullivan was directed to deliver the books and
papers connected with the office of supervisor to Bradley.

Thereafter, notwithstanding these facts, a committee on
contested seats of the board of supervisors, to which the mat-
ter had been referred, reported in favor of the seating of Sul-
livan, which report was adopted, and he sat with the board
and voted for the resolutions in question.

Thereafter chapter 148 of Laws of 1893 was passed, assum-
ing to legalize the action of the board of supervisors in the
premises.

Further facts are stated in the opinion.

*Chester B. McLaughlin* for appellant. To enable the plaintiff to maintain this action under the statute (Chap. 673, Laws of 1887, as amended by chap. 301, Laws of 1892), if an action be maintained at all, he must allege in his complaint, and prove upon the trial, that the defendant threatens and intends to proceed under the resolution and incur expense. (Laws of 1893, chap. 148; *Gildersleeve* v. *Landon*, 73 N. Y. 609; Abbott's Tr. Br. Pl. 457; *Albro* v. *Figuera*, 60 N. Y. 630; *Goodyear* v. *De La Vergne*, 10 Hun, 537; *Whitney* v. *Ticonderoga*, 53 Hun, 214; 127 N. Y. 40.) Conceding that the defendant intends to prepare ballots and incur expense, as alleged in the complaint, plaintiff failed to prove a cause of action against defendant. (*People* v. *Carpenter*, 24 N. Y. 86; *Bennett* v. *Hetherington*, 44 Iowa, 142; *Baker* v. *Bd. Suprs.*, 40 Iowa, 226; *Evansville* v. *City of Evansville*, 15 Ind. 395; *People ex rel.* v. *Suprs.*, 3 Abb. Ct. App. Dec. 560; Bingham on Estoppel [4th ed.], 33; 6 Am. & Eng. Ency. of Law, 42; Code Civ. Pro. § 926.) Sullivan was at least a *de facto* officer, and his acts were as binding as though he was a *de jure* officer. (*Dolan* v. *Mayor*, 68 N. Y. 274; *People* v. *Hopson*, 1 Den. 574; *Wilcox* v. *Smith*, 5 Wend. 231; *Petersilea* v. *Stone*, 119 Mass. 465; *People* v. *Petrea*, 92 N. Y. 128; *Morrison* v. *Sayre*, 40 Hun, 465; *Board of Auditors* v. *Benoit*, 20 Mich. 181; *Aud.-Gen.* v. *Menonimee Co.*, 89 Mich. 552; *People ex rel.* v. *Trustee, etc.*, 28 N. Y. S. R. 397; *Barrett* v. *Sayer*, 34 N. Y. S. R. 325; *Colton* v. *Beardsley*, 38 Barb. 29; *Weeks* v. *Ellis*, 2 Barb. 320; *Reed* v. *City of Buffalo*, 4 Abb. Ct. App. Dec. 22; Penal Code, §§ 42, 43; 55 Penn. St. 468; 32 N. J. Eq. 236; *Curtis* v. *Barton*, 139 N. Y. 512; *Ring* v. *Grout*, 7 Wend. 341; 40 Hun, 465.) Knowledge on the part of the chairman of the board of supervisors, or of the entire board, that Sullivan was not entitled to his seat is immaterial. (*Petersilea* v. *Stone*, 119 Mass. 465.) Chapter 148 of the Laws of 1893 legalized the proceedings of the board in reference to the removal of the county seat, and removed all objection to the status of any member of the board. (Endlich Interp. Stat.

§ 291; 3 Am. & Eng. Ency. of Law, 760; *Rogers* v. *Roches-
ter*, 21 Hun, 44; *Guest* v. *City of Brooklyn*, 8 Hun, 97;
*Tifft* v. *City of Buffalo*, 82 N. Y. 204; *People ex rel.* v.
*McDonald*, 69 N. Y. 362; *W. I. B. Co.* v. *Town of Attica*,
119 N. Y. 204; *Chicago, etc.,* v. *Langdale, etc.,* 56 Wis. 614;
*Cathart* v. *Comstock*, 56 Wis. 590; *State* v. *Burton*, 27 Pac.
Rep. 141; *In re Clinton Bridge*, 10 Wall. 454; *Sweet* v. *City
of Syracuse*, 129 N. Y. 316.) The question whether Sullivan
was a *de jure* supervisor could not be tried and determined
in this action. (*Johnston* v. *Garside*, 47 N. Y. S. R. 526;
*Sheehan's Case*, 23 Am. Rep. 374.) The action of the board
in passing the resolution in question was a judicial act and
cannot be inquired into in this collateral action. Its determi-
nation and decision can only be reviewed by a direct proceed-
ing brought for that purpose. (*Baker* v. *Bd. Suprs.*, 40 Iowa,
226; *People* v. *Suprs.*, 35 Barb. 413; *In re Cooper*, 22 N.
Y. 86; *Vanderheyden* v. *Young*, 11 Johns. 151; *People* v.
*L. I. R. R. Co.*, 58 Hun, 412; *Sweet* v. *Hulbert*, 51 Barb.
312; Code Civ. Pro. § 282; *Bennett* v. *Hetherington*, 41
Iowa, 142; *Henck* v. *Carpenter*, 54 Iowa, 40; *Jermaine*
v. *Waggner*, 1 Hill, 279; *Evansville* v. *City of Evans-
ville*, 37 Iowa, 78; *People* v. *Carpenter*, 24 N. Y. 86.)
If the action of the board was judicial, the provisions of sec-
tion 17 of County Law as to title, etc., do not apply; and, if
legislative, the statute is directory, and the resolution valid.
(*People ex rel.* v. *Gallup*, 12 Abb. [N. C.] 64; Endlich
Interp. Stat. §§ 434, 437, 536; *Santa Clara Co.* v.
*S. P. R. R. Co.*, 66 Cal. 642; Potter's Dwarris on Stat.
22; *People* v. *Cook*, 14 Barb. 290; *Justice* v. *House*,
20 Ga. 328; *State* v. *Click*, 2 Ala. 26; *Lackawanna Co.*
v. *Little Wolf*, 38 Wis. 152; *Wiggins* v. *New York*, 9
Paige Ch. 16; *Cape Girardeau* v. *Riley*, 52 Mo. 424;
*Swann* v. *Buck*, 40 Miss. 268; *McPherson* v. *Leonard*,
29 Md. 377.) In any view the order and judgment of the
General Term must be reversed for the reason that it had no
power to direct a final judgment in the action. (*Purchase* v.
*Matteson*, 25 N. Y. 211; *Guernsey* v. *Miller*, 80 N. Y. 181;

*Arthur* v. *Griswold*, 55 N. Y. 400 ; *Thomas* v. *Ins. Co.*, 99
N. Y. 250 ; *Ehrichs* v. *De Mill*, 75 N. Y. 370 ; *Goodwin* v.
*Conklin*, 85 N. Y. 21.)

*Richard L. Hand* for respondent. This appeal presents
nothing but an abstract legal question which the court will
not entertain. (Laws of 1892, chap. 686, §§ 32, 33 ; *In re
Manning*, 139 N. Y. 46 ; *People ex rel.* v. *Com. Coun-
cil*, 82 N. Y. 575.) The attempted action of the board
of supervisors in relation to the site of the county seat of
Essex county was without jurisdiction, illegal and void.
(*Schneider* v. *Leizman*, 57 Hun, 561, 562 ; *People ex rel.*
v. *Suprs.*, 63 How. Pr. 411 ; 99 N. Y. 526 ; Laws of 1892,
chap. 686, §§ 17, 31, 32, 73, 230 ; *In re Board of Street
Opening*, 62 Hun, 499 ; 133 N. Y. 329 ; Penal Code, §§ 42,
43, 56 ; *R., etc., R. R. Co.* v. *C. Nat. Bk.*, 60 Barb. 235 ;
*King* v. *Corp. of Bedford Level*, 6 East, 356 ; *In re
Sullivan*, 21 N. Y. Supp. 167 ; *People ex rel.* v. *Albertson*,
55 N. Y. 50 ; *People ex rel.* v. *Com. Council*, 77 N. Y.
503 ; *Nichols* v. *McLean*, 101 N. Y. 526 ; *People ex rel.* v.
*Bd. Suprs.*, 69 Hun, 406 ; *Cronin* v. *Gundy*, 16 Hun, 520 ;
*People ex rel.* v. *Peabody*, 6 Abb. Pr. 228, 236 ; Laws of
1890, chap. 569, §§ 13, 64, 65 ; Laws of 1892, chap. 658 ;
*People* v. *Carter*, 29 Barb. 208 ; *Beebe* v. *Bd. Suprs.*, 64 Hun,
377 ; *Barto* v. *Himrod*, 8 N. Y. 483 ; *In re Municipal Suff-
rage to Women*, 161 Mass. 586.) The act of March 17, 1893
(Chap. 148), does not aid the appellant. (Const. N. Y. art.
3, §§ 18, 22 ; *People* v. *O'Brien*, 38 N. Y. 193 ; *Kerrigan* v.
*Force*, 68 N. Y. 381 ; *People* v. *Hoffman*, 60 How. Pr. 324 ;
Cooley's Const. Lim. 239 ; *People* v. *Allen*, 42 N. Y. 404 ;
*People ex rel.* v. *Albertson*, 55 N. Y. 50 ; *In re N. Y. & L.
I. Bridge Co.*, 54 Hun, 400 ; *Astor* v. *R. R. Co.*, 113 N. Y.
93, 113 ; *Farnham* v. *Benedict*, 107 N. Y. 159, 177 ; *People* v.
*Bull*, 46 N. Y. 57 ; *People ex rel.* v. *Hoffman*, 60 How. Pr.
324.) This action lies for the relief sought, and is well
brought. (Laws of 1892, chap. 301, § 1 ; Code Civ. Pro.
§ 1925 ; *Beebe* v. *Suprs.*, 64 Hun, 377 ; *Ayres* v. *Lawrence*,

59 N. Y. 192; *Peck* v. *Belknap*, 130 N. Y. 394; Laws of
1892, chap. 680, §§ 83, 84, 86; *King* v. *Barnes*, 109 N. Y.
267; *Brackett* v. *Griswold*, 128 N. Y. 644; *Van Slooten* v.
*Wheeler*, 21 N. Y. Supp. 329.)

FINCH, J.   The appellant contests the right of the plaintiff
to maintain this action at all, because there is no evidence that
the clerk had threatened to submit the question of removing
the county seat to the electors.   It needed no threat to estab-
lish the danger apprehended.   The clerk, as a public officer,
was required by law to make the submission upon the direc-
tion of the board of supervisors.   That direction had been
given.   It was his official duty to obey it, and the presumption
is that he was about to do so, and would do so unless restrained
by the order of the court.   The case was not one of a mere
apprehension of some possible act, but of the performance of
an official duty already commanded by an apparently compe-
tent authority, the regularity of which it was not his business
to investigate.   The act was much more certain to be done
than one merely threatened by a person under no obligation
at all.   We must, therefore, consider the other questions raised
by the appeal.

The resolution of the board of supervisors ordering a
removal of the county seat, subject to a vote of the electors,
depended for its validity upon the vote of Sullivan as super-
visor of the town of Minerva, and so as a lawful member of
the board.   That he was not such supervisor had been
adjudged before he took his seat.   The court had ordered a
re-canvass of the votes cast, without rejecting certain paster
ballots, and, as a result, Bradley was found to have been
elected, and the proper certificate was given to him.   Never-
theless, the board denied Bradley's right and seated Sullivan,
assigning as authority for the decision the action of the state
board of canvassers in the contest of Osborn against
Dean in Dutchess county, which was a contempt of
court and punished as such.   Thereafter the seating of
Sullivan was brought before the Supreme Court by a writ

of certiorari, and the action of the board in that respect reversed and annulled. There is no doubt that Bradley was the duly elected supervisor and Sullivan an intruder and usurper, and that the action of the board in assuming to seat him was utterly indefensible. He had no right to vote and the resolution was never passed by the required majority. So much is not seriously questioned, but the appellant insists that while Sullivan was not supervisor *de jure* he was such *de facto,* and so his vote is to be sanctioned and the resolution upheld. I do not think that the doctrine invoked has any just application to a case like the present. It applies for the protection of third persons or the public, who have acquired rights upon the faith of an appearance of authority and who will be harmed by the actual truth. It does not apply where the official action is challenged at the outset and before any person has been or can be misled by it, and where no rights have, as yet, accrued upon its faith, either of a public or private character. Here the act of the officer had but one immediate effect, which was to set in motion another public officer. The resolution of the board did not change the county seat. Relatively to that result it was inchoate, incomplete, one step toward a purpose not yet accomplished, and before the end was reached and the intended act completed, the court interfered and prevented further progress. No private individual had acquired any right upon the faith of the resolution, and before the public had or could acquire any, the validity of the action was challenged, and the very office of the injunction was to stop the incomplete and inchoate act so as to prevent either individuals or the public from being in any manner affected by it. But if the doctrine had any proper application it is still true that Sullivan was not a *de facto* officer, because, when he cast his vote, he had no color of title and was a mere usurper and intruder. An existing appearance of right which may mislead, is the essential ground of the doctrine, for otherwise there is no excuse for the party deceived and no basis for a demand of protection. There must either be some appointment or election which might be supposed to be

valid, or, possibly, such an occupation of the office without dispute and with general acquiescence as would reasonably lead to the inference that such authority existed although not at the time known. Here, however, all color of title in Sullivan was lost by the adjudication of the court compelling a re-canvass, and its further explicit order requiring him to surrender the papers of the office. His color of title was wholly destroyed by a public judicial decision, and he became a mere usurper and intruder whose act was challenged at the moment it was done.

The more difficult question, however, is as to the effect of the validating act of the legislature which provided that the proceedings of the board relating to the change of the county seat should have the same force and effect as if all the persons sitting as members had been duly elected and qualified. There was no effort to make Sullivan a lawful supervisor. That the legislature could not have done. There was no attempt to make his vote a legal vote. That, also, was beyond the legislative power. But the effort was to make the thing done as valid as if Sullivan had been lawfully elected, and as if his vote had been entirely legal. In other words, the legislature itself passed the resolution, for that had nothing else to stand upon. The board did not pass it, for a majority of the supervisors rejected it, and it stands, if it stands at all, solely upon the fiat of the legislative will. But the Constitution forbids the passing of a local law in cases, among others, of "locating or changing county seats." Can ten or twenty men, not supervisors, having no color of authority, and being mere usurpers, call themselves a county board, pass a resolution to change the county seat, and then have their act validated by a special and local law covering that case alone? It seems to me that the validating act would be one in a case of changing a county seat, that it would amount exactly to such a change by legislative enactment, subject to the vote of the people, and, in the case supposed, the legislature would be enabled to defeat wholly the constitutional provision by the indirect method of a defective resolution and then of a validating act. It would do indirectly

what it could not do directly, and avoid the constitutional provision in form while violating it in fact. Here there was something more than a defect or an irregularity. There was an utter want of authority for the resolution. It never was in fact passed. It became one, if at all, by pure force of the legislative will, and in substantial effect it may be said that the supervisors never passed the resolution, but the legislature did. They might have done it by some general law. They could not do it by one which touched the county of Essex alone and a single pretended act of its board of supervisors.

I think the General Term were right, and the judgment should be affirmed, with costs.

All concur, except ANDREWS, Ch. J., who dissents on the question of validation.

Judgment affirmed.