(54 Misc. Rep. 138)

### BERESFORD v. DONALDSON et al.

(Supreme Court, Special Term, Westchester County. April 6, 1907.)

**1. MUNICIPAL CORPORATIONS—APPOINTMENT—AUTHORITY OF MAYOR.**

Where a city charter provides for the appointment of an officer by the mayor with the consent of the common council, the mayor could not obligate the city for payment of salary by the arbitrary appointment of a person without the consent of the council, and where one pretended to act as an officer for several months despite the council's refusal to approve his appointment, he could not recover for his services; the mayor deriving no exclusive power of appointment through charter provisions that the mayor shall exercise a constant supervision over the conduct of all subordinate officers and possess all the power conferred upon mayors by any statute of the state, nor under Laws 1898, p. 378, c. 182, § 46, providing that it shall be the duty of a mayor to see to the faithful performance of their duties by city officers and departments, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 308.]

**2. SAME—DE FACTO OFFICER.**

Where a city charter requires the approval of the common council of the appointment of an officer, he is neither a de jure or de facto officer, though appointed by the mayor, where he holds office despite the council's refusal to approve his appointment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 308.]

**3. MUNICIPAL CORPORATIONS—AUDITING CLAIMS—CONCLUSIVENESS.**

A common council being the auditing board of a city, where one council passes upon and rejects a claim for salary, it becomes res judicata, and a subsequent council has no power to review the judicial action of the former.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 2187.]

**4. SAME—RATIFICATION OF INEFFECTIVE APPOINTMENT.**

Where, in 1905, the appointment of a city officer was ineffective to charge liability against the city for salary, because the common council refused to approve his appointment, a subsequent council in 1907, after the term of the appointee's service had expired, could not ratify the appointment and give him the right to compensation for his services.

**5. SAME—RIGHT OF COUNCIL TO CREATE OFFICE.**

In the absence of authority in its charter, the common council has no right to appoint or employ an acting commissioner of public works, nor to create such an office.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 298.]

**6. SAME—ALLOWANCE OF ILLEGAL CLAIM—INJUNCTION.**

Where three of six aldermen voted for a resolution directing the payment of the salary claim of one who was never appointed an officer, and

all of them voted in favor of the resolution ratifying the appointment, a taxpayer was justified in bringing an action to enjoin the payment of the claim.

**7. PLEADING—DEMURRER—FACTS ADMITTED.**

Where plaintiff sued to enjoin aldermen from paying an illegal salary claim, and the complaint alleged that they intended to adopt a resolution directing payment of the claim, the allegation was assumed to be true on demurrer to the complaint.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Pleading, §§ 525–534.]

Action by Archibald Beresford against John Donaldson, Jr., and others. Demurrer overruled, and motion for an injunction pendente lite granted.

G. H. Taylor, for plaintiff.
David H. Hunt, for defendants.

TOMPKINS, J. This is a taxpayer's action. The complaint alleges: That the plaintiff is a citizen of the city of Mt. Vernon, and is a taxpayer, and is entitled to maintain a taxpayer's action. That the defendants are members of the board of aldermen of the said city. That on or about the 23d day of November, 1905, Edward F. Brush, the mayor of the said city, without legal authority, assumed to appoint one William H. Martens as acting commissioner of public works of said city, to fill a vacancy then existing in that office, and that thereafter on several occasions the said mayor, in pursuance to the provisions of the charter of said city, duly nominated the said Martens, and presented his name to the common council of said city for its consent, and for his appointment as commissioner of public works. That the said Martens, so nominated by the mayor as aforesaid, was never appointed to the said office with the consent of the common council, as required by the said charter; nor did he ever have legal, or any, title or color of title to the said office. But, on the contrary, the said common council, on each occasion when said Martens' name was presented by the mayor, refused to consent to his appointment as such commissioner, and as a matter of fact he never was appointed to the said office, nor did he ever qualify, as required by law, nor ever legally hold the said office. The complaint further alleges: That on April 6, 1906, the said mayor, with the consent and at the direction of the said Martens, duly withdrew further consideration of his name as a nominee for the said office. Notwithstanding the fact that the said Martens was never duly or otherwise appointed as commissioner of public works, he, against the protests of the common council and without its permission, but at the direction and with the aid and procurement of the said Edward F. Brush, then and now mayor of the said city, took possession of the room in the city hall of the said city of Mt. Vernon, known as the "office of the said commissioner of public works," and assumed to act as such commissioner of, and to perform duties as such, although he had no legal right or authority so to do. That the said William H. Martens claims to have performed the duties of said office of commissioner of public works from the 22d day of November, 1905, until the 6th day of April, 1906, on which last-mentioned day one Charles Sillery was duly nominated by the said mayor and, with the consent of

the common council duly given, was duly appointed as commissioner
of public works, and qualified as such, and is now such commissioner,
and that upon the appointment of ,the said Sillery the said Martens
vacated said room and surrendered possession thereof to said Sillery.
The complaint further alleges: That thereafter the said Martens pre-
sented to the common council of said city a claim for $1,294.50, which
he alleged was due to him from the said city for salary incident to the
said office of commissioner of public works, or for compensation for
his services claimed to have been rendered as acting commissioner of
public works at the direction of the said mayor. That the said claim
was duly referred to the auditing committee of the said common coun-
cil, which on a number of occasions in the year 1906 rejected the same
upon its merits, determining, upon the merits thereof, that it was un-
founded and illegal, and that it did not constitute a valid claim against
or a liability of the city of Mt. Vernon. The complaint further alleges
that at a meeting of the common council, at which the defendants
herein were present, held on the 18th day of December, 1906, the de-
fendant Donaldson offered a resolution, a copy of which is annexed
to the complaint, purporting to ratify the action of the mayor in the
employment of the said William H. Martens "in the office of commis-
sioner of public works" as aforesaid, and purported to direct "that a
draft be drawn on the general fund" to his order, for the sum of $1,-
294.50, being in payment for said services for the period of 136 days,
at the rate of $3,500 per year, which was the salary incident to the
office of commissioner of public works. That said resolution was voted
down by the common council, although three of these defendants voted
in favor of it. The complaint further alleges: That, notwithstanding
the said action of the common council in voting down the resolution
offered by the said Donaldson, the said Donaldson, at a meeting of the
common council on the 2d day of January, 1907, offered another resolu-
tion, a copy of which is annexed to the complaint, which resolution
purports to ratify the action of the mayor in employing the said Mar-
tens "to render services in connection with the department of public
works." That the said resolution was carried by a vote of six to five;
five of the six affirmative votes being cast by the defendants herein,
and the sixth vote being cast by Mayor Brush. The complaint further
charges that the defendants, having succeeded, with the assistance and
vote of the mayor, in carrying the said resolution purporting to ratify
the said alleged employment of Martens by the mayor, intend and
threaten in the near future to vote in favor of another resolution to be
introduced to the common council by the defendant John Donaldson,
Jr., or another of their number, to pay from the funds of the city of
Mt. Vernon the said illegal and unfounded claim of said Martens in
the sum of $1,294.50. The complaint also alleges that the said Mar-
tens was never employed in any capacity by the common council of the
city of Mt. Vernon in the years 1905 and 1906, and that any duties
which he might claim to have performed were performed against the
protests of the common council, and that the said mayor did not have
power or legal authority to appoint the said William H. Martens as
acting commissioner of public works, or to employ him as such com-
missioner, or in said office, or to render services in connection with

the said department, or in any capacity, on behalf of the c'ty of Mt. Vernon, and that the said common council has no power or authority to pay for the services alleged to have been rendered by the said Martens, and that the said common council could not and cannot legally ratify the action of the mayor in employing him as aforesaid, as the said common council has purported to do by its resolution passed on the 2d day of January, 1907. The complaint further alleges, upon information and belief, that the claim of the said Martens for the sum of $1,294.50, whether it is considered as a claim for salary or as a claim for services rendered, was and is legally void, and not a proper or legal charge against said city, and cannot legally be paid from the funds of the said city. The complaint also alleges that the threatened payment of the said claim by the defendants and the mayor will be illegal and unlawful, and will cause waste of and injury to the funds of the city of Mt. Vernon. And the plaintiff's prayer for relief is that it be adjudged that the said claim is illegal and void, and not a proper or legal liability of the city of Mt. Vernon, either as a claim for salary incident to the office of commissioner, or as compensation for services rendered in performing the duties of acting commissioner of public works, and that the resolution adopted on January 2, 1907, be adjudged to be illegal and void, and the defendants be enjoined from directing the payment of said claim, and from voting in favor of any resolution approving, auditing, or allowing such claims, or in acquiescing in or countenancing the payment of the said claim. Upon the complaint and the affidavits annexed to the order to show cause the plaintiff asks for an injunction pendente lite.

In opposition to the motion for an injunction the defendants swear that they have no intention to offer or vote for a resolution directing the payment of any sum for salary or services to William H. Martens as acting commissioner of public works of the said city, as set forth in the complaint, and that the resolution adopted on January 2, 1907, was for the sole purpose of allowing the said Martens to bring an action against the said city for the purpose of establishing any valid claim that he might have for such services. The defendants' answering affidavits also show that on the 21st day of November, 1905, one William A. Miles, who was the commissioner of public works of said city, resigned his office, which resignation was unanimously accepted, and on the following day the said Miles abandoned the office of commissioner of public works; that there is no provision in the charter of the city of Mt. Vernon allowing any one to be appointed as deputy commissioner of public works; that thereupon, there being no deputy commissioner of public works, and no officer who under the charter could perform the duties of the office of commissioner of public works, the mayor directed said Martens to perform such duties and nominated him as commissioner, but that the common council refused to approve the appointment, and that during all the time from November 22, 1905, until the 6th day of April, 1906 (which is the period Martens claims compensation for), there was no commissioner of public works of said city; and that during that period the said Martens performed the duties of that office. The affidavits further show that at the time Commissioner Miles abandoned said office there were contractors ac-

tually engaged upon the public works being prosecuted by the said city, and that it was necessary that the streets of the city should be cleaned and kept in repair, and in that emergency the mayor directed said Martens to do the work of commissioner of public works. It also appears, from certified copies of resolutions adopted by the common council of said city, that during the period covered by the claim of the said Martens the common council regularly, about every two weeks, directed the drawing of drafts to the order of the mayor for moneys for the purpose of paying the employés of the department of public works, all of whom were working at that time under the direction of the said Martens as acting commissioner.

Before the submission of the plaintiff's motion for an injunction pendente lite the defendants demurred to the complaint on the grounds that the complaint does not state facts sufficient to constitute a cause of action. Thereupon a motion was made by the plaintiff, in pursuance of the provision of section 537 of the Code of Civil Procedure, for judgment upon the said demurrer, upon the ground that the said demurrer is frivolous. Upon the argument of this motion it was agreed by counsel for the respective parties that the court should determine the issues of law raised by the demurrer, and that all the questions arising upon the motion for an injunction and presented by the demurrer should be decided at the same time, and in effect the motion for judgment upon the demurrer as frivolous was withdrawn. The questions to be decided are: First. Does the complaint state facts sufficient to constitute a cause of action? Second. If it does, is the plaintiff entitled to an injunction pendente lite?

The admitted facts are that the office of commissioner of public works became vacant; that the office was not filled in the manner provided by the charter, because the common council refused to consent to the appointment of Martens, and because the mayor failed to present the name of a person who was acceptable to a majority of the members of the common council. On that account the office remained vacant from November, 1905, to April, 1906, and during that time Martens did the work, or pretended to do the work, of the office. He did it by virtue of a temporary appointment or designation by the mayor, which was never approved or consented to by the common council during the term of his service. The question is whether, under these circumstances, the common council has a right to pay him the salary fixed by the city charter, or to pay him for the services so performed by him.

By the charter of the city of Mt. Vernon the office of commissioner of public works is created, and it is provided that the appointment shall be made by the mayor, with the consent of the common council. In other words, there can be no appointment of commissioner of public works under the charter without the consent and approval of the common council. Can the mayor, then, obligate the city for the payment of salary, or for services rendered, by an arbitrary appointment of a person to the office of commissioner of public works without the consent of the common council, and in defiance of its refusal to consent to the appointment of that very person? I think not. The statute prescribes the manner and method of filling the office, and it

cannot be done in any other manner and the city be made liable to pay therefor.

Counsel for the defendants call my attention to a provision of the city charter relating to the mayor, which reads as follows:

"It shall be his duty to take care that within said city the laws of the state be faithfully presented, to exercise a constant supervision over the conduct of all subordinate officers, to recommend to the common council from time to time such measures as he shall deem necessary or expedient for them to adopt."

And also the following:

"The mayor of the city of Mt. Vernon shall possess all the power and authority conferred upon the mayor of cities by any general statute of the state."

And Laws ,1898, p. 378, c. 182, § 46 (a general law), containing the following language:

"It shall be the duty of the mayor to see to the faithful performance of their duties by the city officers and departments, and to maintain peace, and good order, within the city."

Neither of these provisions is broad enough to confer upon the mayor power to appoint or designate a person to fill an office created by the charter, where the charter expressly provides that the appointment shall be with the consent or have the approval of the common council. Under the general powers conferred by the statute the mayor may have the right to maintain peace and good order in an emergency, to appoint or employ officers or employés for whose appointment or employment there is no express provision; but he cannot make an appointment provided for by the charter except in the manner therein provided. Otherwise, the provisions of the statute respecting the manner of appointment could be nullified by the act of the mayor. In this case the appointment of Martens was not only not consented to, but, on the contrary, was expressly rejected on three occasions, during all of which time he was pretending to hold the office for which he is now seeking pay.

My conclusion is that the appointment of Martens by the mayor was without authority in law, and that his service in the office from November, 1905, until April, 1906, entitled him to no compensation, and that there is no obligation, express or implied, on the part of the city to pay him. The powers of the mayor and common council are fixed by law, and no liability can be imposed on the city, especially with respect to the appointment of officers created by the charter and their salaries, except in the manner provided by the statute. "There can be no doubt upon the proposition that one claiming a salary must establish his right to the office to which the salary attaches." Murtagh v. City of N. Y., 106 App. Div. 99, 94 N. Y. Supp. 308. It appears from the complaint and the motion papers, and it is not disputed, that Mr. Martens never qualified as commissioner of public works, and that he did not file the bond required by the city charter. No compensation is recoverable for the performance of public service unless it is given by law. There is no implied obligation on the part of the municipality, and no such relation exists between it and its officers as compels it to

make remuneration, unless the law so provides.   Haswell v. Mayor,
81 N. Y. 255.

No appointment having been made in the manner fixed by the stat-
ute, Mr. Martens was not commissioner de jure, and because he did
not have the color of title to the office, because he did not hold it by
virtue of an appointment which might be supposed or even claimed
to be a valid appointment as such commissioner, he was not even an
officer de facto.   To constitute a de facto officer "there must either
be some appointment or election which might be supposed to be valid
or possible, such an occupation of the office without dispute and with
general acquiescence, as would reasonably lead to the inference that
such an authority existed, although not at the time known."   Wil-
liams v. Boynton, 147 N. Y. 433, 42 N. E. 184.   To the same effect,
see Hand v. Deady, 79 Hun, 76, 29 N. Y. Supp. 633.   He is there-
fore clearly not entitled to the salary of the office for which he has
presented a claim to the board of common council, and which has been
duly considered and rejected.   Indeed, it may be said, inasmuch as
the common council, being the auditing board of the city, has passed
upon and adjudicated the claim, that it is res adjudicata, and that
the present common council has no power to review the judicial action
of the former common council.

Is the claimant entitled to be paid for his services now, because the
present common council has adopted a resolution ratifying the act of
the mayor in employing Mr. Martens to do the work of commissioner
of public works?   An appointment by the mayor in 1905 that is in-
effective to charge liability on the city cannot be made effective by
action of a common council in 1907, and long after the term of service
of the appointee has expired.   The common council now in office can-
not give force to an appointment or employment that was unauthorized
and void at the time it was made.   Mr. Martens was nominated on a
number of occasions by the mayor, in pursuance of the provision of
the charter, and on each occasion the common council rejected the
nomination.   Subsequently the name was withdrawn by a written com-
munication to the mayor which was transmitted to the common council.
Under the charter of the city, even the common council had no right
to appoint or employ an acting commissioner of public works, such as
Mr. Martens claims to have been; nor could the mayor or common
council create such an office.   O'Connor v. Walsh, 83 App. Div. 179,
82 N. Y. Supp. 499.   If the common council or mayor had no right to
appoint Mr. Martens as acting commissioner of public works, after the
withdrawal of his nomination by the mayor, the present common coun-
cil has no power to ratify such an appointment or employment.   Lyddy
v. Long Island City, 104 N. Y. 218, 10 N. E. 155.   In that case the
court said:

"It follows, as the necessary result of a want of power on the part of the
common council to create liability by express contract, that it could not legal-
ize such claim by acknowledgment, ratification, or otherwise."

In the case of Hyde v. Auditors, etc., of Brooklyn, reported in 21
How. Prac. 339, the court says:

"This claim was not incurred by order of the common council; or, if the
vote sanctioning and directing its payment is to be regarded as such an or-

der, that was not made until December, 1859 (two years after). It would be quite dangerous to allow any subsequent vote of the common council, reviewing the previous illegal expenditure, to have the effect of abandoning the protection of the act and of payment of the claim."

I think that the plaintiff was justified in bringing this action and seeking to restrain the defendants from paying the claim of Mr. Martens for the reason that on the 18th day of December, 1906, three of the six defendants voted in favor of a resolution directing that a draft be drawn in favor of Mr. Martens for the full amount of his claim, viz., $1,294.50; and that on the 2d day of January, 1907, all of the defendants voted in favor of the resolution ratifying the action of the mayor in employing the said Martens. The attempts made by the defendants as members of the present common council to pay or legalize the claim of Mr. Martens justify the plaintiff in inferring that their action on the 2d of January was to lay a foundation and to provide an excuse for subsequent action directing the payment of the claim.

The complaint alleges, upon information and belief, that the defendants herein threaten and intend to adopt a resolution directing the payment of the said claim. In deciding the questions raised by the demurrer, that allegation must be assumed to be true. If their purpose was to place claimant in a position where he might assert his claim in an action at law against the city, as stated in their answering affidavits, that purpose will not be defeated by an injunction in this action. The claimant will still have a right to bring an action for the original claim as presented by him on a quantum meruit.

The demurrer is overruled, with leave to answer on payment of costs, and the motion for an injunction pendente lite is granted.