## DAVIS v. BERRY et al.

### (District Court, S. D. Iowa, E. D.    June 24, 1914.)

### No. 9-A.

1. Constitutional Law (§ 203*)—Ex Post Facto Law.

Acts 35th Gen. Assem. Iowa, c. 187, requiring performance of the operation of vasectomy on criminals who have been twice convicted of a felony, is not unconstitutional as an ex post facto law, though applicative to criminals convicted one or more times for a felony prior to the enactment of the statute.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 584–590; Dec. Dig. § 203.*]

2. Injunction (§ 21*)—State Law—Invalidity—Intent Not to Enforce.

Where suit was instituted to restrain state officers from enforcing Acts 35th Gen. Assem. Iowa, c. 187, requiring the performance of vasectomy on criminals twice convicted of a felony on the ground that the act was unconstitutional, the fact that the order subjecting complainant to the operation had been rescinded on the advice of the Attorney General was not ground for refusal of the writ, since the Attorney General's opinion was advisory only, and not binding on the defendants or their successors in office, who might, in the absence of injunction, proceed to the enforcement of the law.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 19; Dec. Dig. § 21.*]

3. Injunction (§ 85*)—Invalid Statutes—Enforcement—Presumptions.

Though every officer acts at his peril under a statute which another claims is unconstitutional and void, where a person will suffer irreparable injury if the statute is enforced, it will be presumed that it will be observed, and an injunction should issue to enjoin its enforcement if invalid.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 155, 156; Dec. Dig. § 85.*]

4. Criminal Law (§ 1213*)—Cruel and Unusual Punishment.

Acts 35th Gen. Assem. Iowa, c. 187, providing for the performance of the operation of vasectomy on criminals twice convicted of a felony, is unconstitutional as providing a cruel and unusual punishment.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3304–3309; Dec. Dig. § 1213.*]

5. Constitutional Law (§ 318*)—"Due Process of Law"—Hearing.

Acts 35th Gen. Assem. Iowa, c. 187, providing for the performance of the operation of vasectomy on criminals twice convicted of a felony on an order of the state board of parole after a private hearing before the board not open to the public, and of which the prisoner is not advised until ordered to submit to the operation, is unconstitutional as a deprivation of due process of law, which means that every person must have his day in court, must be confronted by his accuser, and given a public hearing according to law in the regular course of its administration through courts of justice.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 949; Dec. Dig. § 318.*

For other definitions, see Words and Phrases, vol. 3, pp. 2227–2256; vol. 8, p. 7644.]

6. Constitutional Law (§ 203*)—"Bill of Attainder"—Punishment for Crime—Vasectomy.

Acts 35th Gen. Assem. Iowa, c. 187, requiring performance of the operation of vasectomy on criminals twice convicted of a felony, is unconstitu-

tional as a "bill of attainder," in that it provides for the infliction of a punishment for past offenses by legislative act without a jury trial.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 584–590; Dec. Dig. § 203.*·

For other definitions, see Words and Phrases, vol. 1, pp. 779, 780.]

In Equity. Suit by Adolph Davis against William H. Berry and others, constituting the Iowa State Board of Parole, Austin F. Philpott, the Iowa Penitentiary physician, and James C. Sanders, warden of said penitentiary, to restrain the enforcement of Acts 35th Gen. Assem. Iowa, c. 187, requiring the performance of vasectomy on criminals twice convicted of a felony. Decree for complainant.

George B. Stewart, of Fort Madison, Iowa, for complainant.
George Cosson, Atty. Gen., of Des Moines, Iowa, for defendants.

Before SMITH, Circuit Judge, and POLLOCK and SMITH Mc-PHERSON, District Judges.

SMITH McPHERSON, District Judge. The complainant is a prisoner in the Iowa penitentiary. Defendants Berry, Howe, and Mott constitute the Iowa board of parole, Sanders is the warden, and Philpott is the physician of the penitentiary. The case is one of diversity of citizenship, with federal questions presented by a bill in equity with an application for a temporary injunction to restrain defendants as state officers from enforcing chapter 187 of the Acts of the Thirty-Fifth General Assembly 1913, authorizing a surgical operation called vasectomy on idiots, feeble-minded, drunkards, drug fiends, epileptics, syphilitics, moral and sexual perverts, and mandatory as to criminals who have been twice convicted of a felony.

[1] Complainant has been twice convicted of a felony, one of which was prior to the enactment of the statute in question (and in another state), and the other since (in this state), and for the latter he is now imprisoned. The defendant board of parole in February, 1914, made an order that the operation should be performed upon certain designated prisoners, including the complainant. This action was brought by the complainant for the purpose of enjoining each and every of the defendants from subjecting him to the operation. Since the action was instituted the board of parole, under a written opinion of the Attorney General of the state, has rescinded its order, and they and the prison physician say they will observe such opinion. The opinion of the Attorney General is based upon the proposition that the statute is ex post facto if either of the convictions was for an offense committed prior to the enactment of the statute. Complainant's counsel in argument conceded the statute is not an ex post facto one.

[1] The Attorney General was in error when he advised the board of parole that the statute in question is void by reason of it being ex post facto, except only as to prisoners who have been twice convicted for felonies committed since the enactment of the statute. The statute under any construction is not an ex post facto one. State of Iowa ex rel. Gregory v. Jones (D. C.) 128 Fed. 626; Kelly v. People, 115 Ill. 583, 4 N. E. 644, 56 Am. Rep. 184; Commonwealth v. Graves, 155

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Mass. 163, 29 N. E. 579, 16 L. R. A. 256; Sturtevant v. Commonwealth, 158 Mass. 598, 33 N. E. 648; In re Miller, 110 Mich. 676, 68 N. W. 990, 34 L. R. A. 398, 64 Am. St. Rep. 376; Blackburn v. State, 50 Ohio St. 428, 36 N. E. 18; Moore v. State of Missouri, 159 U. S. 673, 16 Sup. Ct. 179, 40 L. Ed. 301; Cooley's Constitutional Limitations (7th Ed.) 382; State v. Dowden, 137 Iowa, 573, 115 N. W. 211; Graham v. West Virginia, 224 U. S. 616, 32 Sup. Ct. 583, 56 L. Ed. 917. He is not being subjected to the operation for that which was by him done prior to the enactment of the statute, but because he voluntarily brings himself within a class covered by the statute, and he does this subsequent to the enactment of the statute.

The Attorney General also advised the board of parole that the statute should be so construed as to be applicable only to prisoners who have been twice convicted of felonies committed since the enactment of the statute. Section 26, article 3, of the Iowa Constitution provides that a statute shall take effect July 4th following its enactment, or, if enacted at a special session, then at the expiration of 90 days after adjournment, or, in case of a declared emergency, by the publication thereof. But the Attorney General, to maintain the proposition that the law is ex post facto as applied to one who was convicted the one time prior to the statute, is doing violence to the state Constitution by contending that the statute would be effective only as to any prisoner many years after its enactment.

[2] The defendant board of parole by rescinding the order subjecting complainant to the surgical operation, and the defendant warden and physician through the Attorney General, now insist that an injunction should not issue because it will serve no purpose. There are two answers to this: Death, resignation, and expiration of terms of office will bring other men into the positions now held by the defendants, who may not entertain the same views as these defendants. The opinion of the Attorney General is advisory only, and is not at all binding on either these defendants or their successors in office.

[3] Again, the statute in question provides that certain persons may be subjected to the surgical operation; but the latter part of section 1 provides that such operations *shall* be performed upon prisoners who have been twice convicted of a felony, such as the complainant. It is the duty of an officer to follow the mandates of the statute. Of course every officer must act at his peril under a statute that another party claims to be unconstitutional and void; but where a person will suffer an irreparable injury if the statute is carried out, the presumption is that such statute will be observed, and that an injunction should issue to enjoin the enforcement of a void statute. Williams v. Boynton, 147 N. Y. 426, 42 N. E. 184; Osborn v. Bank, 9 Wheat. 739, 840, 6 L. Ed. 204; 2 High on Injunctions (4th Ed.) § 310.

Complainant in his verified bill alleges that the statute is in violation of the United States Constitution in that it is in effect a bill of attainder, in that there is to be no indictment or trial; that the statute abridges his privileges, and that he is denied the equal protection of the laws; that he is denied due process of law; that the statute is in conflict with the Iowa Constitution in that the statute denies the inalienable right to enjoy life, liberty, and to pursue and obtain safety

and happiness, and that there is no jury trial awarded him; and that the statute provides cruel and unusual punishment.

[4] The case presents important questions. Statutes like this are of recent years, the first one upon the subject enacted less than 15 years ago. The question has been before appellate courts but twice. In one case, that of State of Washington v. Feilen, 70 Wash. 65, 126 Pac. 75, 41 L. R. A. (N. S.) 418, the statute was upheld. The court held that the punishment was not cruel or unusual in the constitutional sense. That case involved a most heinous offense, that of the ravishment of a female child, and the statute provided that in addition to life imprisonment the jury and the court might determine whether he should be subjected to the operation of vasectomy. So that on the question now presented there was due process of law in that the matter was judicially determined. The other case, by the Supreme Court of New Jersey, was that of Smith v. Board of Examiners, 88 Atl. 963. In that case the operation was to be performed upon a woman who was an epileptic, an inmate of a state charitable institution, and that court held that the statute was based upon an unreasonable police regulation, and denied to her and persons of her class the equal protection of the laws as guaranteed by the fourteenth amendment.

The sole purpose of the operation is to destroy the power of procreation. The operation as originally performed was that of castration. In the twelfth century Henry II declared it treason for any person to bring over any mandate from the pope or any one in authority in church affairs. This he made punishable as to secular clergymen by the loss of their eyes and by castration. Goldsmith's History of England, volume 1, page 88. In Weems v. United States, 217 U. S. 349, 377, 30 Sup. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705, the fact that castration was once inflicted is recognized, and see the case of Whitten v. State, 47 Ga. 301. There is a difference between the operation of castration and vasectomy: castration being physically more severe than the other. But vasectomy in its results is much the coarser and more vulgar. But the purpose and result of the two operations are one and the same. When Blackstone wrote his Commentaries he did not mention castration as one of the cruel punishments, quite likely for the reason that with the advance of civilization the operation was looked upon as too cruel, and was no longer performed. But each operation is to destroy the power of procreation. It is, of course, to follow the man during the balance of his life. The physical suffering may not be so great, but that is not the only test of cruel punishment; the humiliation, the degradation, the mental suffering are always present and known by all the public, and will follow him wheresoever he may go. This belongs to the Dark Ages.

As of course all persons concede that it would be better for society if some men did not beget children; diseased, deformed, mentally weak children, and criminally inclined, are brought into the world, oftentimes to their own shame and against the interest of the public. But are they not at the minimum? And must the marriage relation be formed, under these newly-conceived laws, based upon the brutalities of many centuries since, and be allowed to take the place of the marriage relation formed along the true lines? Must the marriage rela-

tion be based and enforced by statute according to the teachings of the farmer in selecting his male animals to be mated with certain female animals only?

It is somewhat difficult to define with precision what is cruel and unusual punishment in the constitutional sense. Usually the length of imprisonment following a conviction is within the discretion of the legislative body, and we have an extreme case in O'Neil v. Vermont, 144 U. S. 323, 12 Sup. Ct. 693, 36 L. Ed. 450, in which the judgment of the lower court was affirmed and the statute upheld. But quite a per cent. of the bar of the country are of the opinion that the dissenting opinion by Justice Field (concurred in by Justices Brewer and Harlan) was the stronger.

No doubt delegates to the conventions, in providing against cruel punishment, had largely in mind what Blackstone had then recently written, in volume 4, page 376, such as being drawn or dragged to the place of execution, emboweling alive, cutting off the hands or ears, branding on the face or hand, slitting the nostrils, placing the prisoner in the pillory, the ducking, the rack, and the torture, and, as in Spanish countries, crucifying. In a very few states of the Union the whipping post has been retained as a constitutional mode of punishment. But it will be found that the courts in those states have construed the statute thus imposing such punishment in the light of their history, and what has been done and was being done at the time of the adoption of their Constitution. No one can doubt but that under our present civilization if castration were to be adopted as a mode of punishment for any crime, all minds would so revolt that all courts without hesitation would declare it to be a cruel and unusual punishment. As we understand it, castration was never inflicted after the revolution of 1688. So that if, as some now contend, it is now competent for a Legislature to impose such punishment as existed by the common law, the validity of the statute providing for castration could not be upheld because that punishment was one imposed back of the time of the common law as, generally speaking, it comes down to us. In O'Neil v. Vermont, 144 U. S. 323, 12 Sup. Ct. 693, 36 L. Ed. 450, and Weems v. United States, 217 U. S. 349, 30 Sup. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705, and In re Kemmler, 136 U. S. 436, 10 Sup. Ct. 930, 34 L. Ed. 519, all phases of the question are so presented as to leave nothing further to be said.

While it is true that there are differences between the two operations of castration and vasectomy, and while it is true that the effect upon the man would be different in several respects, yet the fact remains that the purpose and the same shame and humiliation and degradation and mental torture are the same in one case as in the other. And our conclusion is that the infliction of this penalty is in violation of the Constitution, which provides that cruel and unusual punishment shall not be inflicted.

This statute not only allows, but commands, the operation of vasectomy to be performed upon all twice convicted of a felony. A felony in Iowa is not only murder, arson, rape, counterfeiting, and other serious crimes known as felonies at the common law, but they have been much extended under the Iowa statute, and some things are

now felonies which until recently were misdemeanors, with trials before a justice of the peace, or else no crime at all, wife abandonment, cutting electric light wires, breaking an electric globe, obstructing highway, unfastening a strap in a harness, and other things. So that if a person commits two or more of these, he is to be subjected to the operation if this statute is enforced.

[5] And it is of no importance in argument whether the prison physician does this on his own motion or under an order of the state board of parole. The hearing is by an administrative board or officer. There is no actual hearing. There is no evidence. The proceedings are private. The public does not know what is being done until it is done. Witnesses are not produced, or, if produced, they are not cross-examined. What records are examined is not known. The prisoner is not advised of the proceedings until ordered to submit to the operation. And yet in many cases there will be involved a serious controverted question of fact. The records of two convictions may show the same name of the party or parties convicted; but there are many men of the same name, but which is no proof that the person in the one case is the same person convicted in the other case. It is common knowledge that many prisoners take assumed names. Who is to determine whether the various names represent one and the same person? And if one of the convictions was in another state, the question will arise whether it was for a felony. These are inquiries that must be held in the open with full opportunities to present evidence and argument for and against. To uphold this statute it must be affirmed that the board of parole or prison physician must hear the evidence and examine laws of other states without notice, and in the prisoner's absence, and determine these questions. And if determined adversely, the prisoner has no remedy, but must submit to the operation.

In the case at bar the hearing was a private hearing, and the prisoner first knew of it when advised of the order. Due process of law means that every person must have his day in court, and this is as old as Magna Charta; that some time in the proceedings he must be confronted by his accuser and given a public hearing. Or as was stated in Leeper v. Texas, 139 U. S. 462, 11 Sup. Ct. 577, 35 L. Ed. 225:

"Law in its regular course of administration through courts of justice is due process, and when secured by the law of the state the constitutional requirement is satisfied."

Under the habitual criminal laws of the state, if a prior conviction is relied on, the same must be pleaded and established by the evidence. But we have cases, this one included, in which the prior conviction has not been judicially established. But in Hayes v. Missouri, 120 U. S. 68, 7 Sup. Ct. 350, 30 L. Ed. 578, it was said that due process of law and the equal protection of the laws was secured if the laws operated on all alike, and that all persons subject to the laws are treated alike under the limitations imposed. And the same holding was made in Duncan v. Missouri, 152 U. S. 377, 14 Sup. Ct. 570, 38 L. Ed. 485. And see Lowe v. Kansas, 163 U. S. 88, 16 Sup. Ct. 1031, 41 L. Ed. 78; Jones v. Brim, 165 U. S. 184, 17 Sup. Ct. 282, 41 L. Ed. 677;

Magoun v. Illinois Trust, 170 U. S. 294, 18 Sup. Ct. 594, 42 L. Ed 1037; Railroad v. Matthews, 174 U. S. 105, 19 Sup. Ct. 609, 43 L. Ed. 909. The cases are numerous and without conflict as to such holdings, and further citations need not be made.

[5] But assuming that the prior convictions all appear of record, and assuming there is no conflict in the testimony and no difficulty in reaching the conclusion, but little or no advance is made in determining the question. If it be said that the statute automatically decides the question and nothing remains for the prison physician to do but to execute that which is already of record, then the statute becomes a bill of attainder. One of the rights of every man of sound mind is to enter into the marriage relation. Such is one of his civil rights, and deprivation or suspension of any civil right for past conduct is punishment for such conduct, and this fulfills the definition of a bill of attainder, because a bill of attainder is a legislative act which inflicts punishment without a jury trial, as is fully discussed and held in the case of Cummings v. Missouri, 71 U. S. (4 Wall.) 277, 18 L. Ed. 356; The Federalist, No. 44, by Madison; Justice Samuel F. Miller on the Constitution, 584; Watson on the Constitution, 733–738.

We hold the statute to be void, and unite in holding that a temporary writ of injunction should be issued as prayed.

SMITH, Circuit Judge (concurring). The foregoing opinion is supported by a wealth of historical and other references, and I do not wish to dissent from any portion of it. But the Iowa law does not provide for a judicial investigation of the identity of the prisoner with the one previously convicted of a felony, as did the law in Washington, construed in State v. Feilen, referred to in the foregoing opinion. The fourteenth amendment to the federal Constitution provides that no state shall deprive any person of life, liberty, or property without due process of law. It seems so manifest to me that the law which provides that such operation (vasectomy or ligation of the Fallopian tubes) shall be performed by the physician of the institution or one selected by him upon any convict or inmate who has twice been convicted of a felony deprives the party in question of due process of law that it can scarcely be discussed. Suppose a person had been twice convicted of a felony and has served his entire time, and should subsequently be an inmate of the penitentiary unconvicted of any crime, but simply held there for safe-keeping, this law in its strictness would require the prison physician to perform the operation upon him in person, or by some person selected by such physician. It seems to me that the victim of this operation is so clearly deprived under this statute of due process of law that an injunction must issue, and I, therefore, express no opinion upon the other interesting questions presented.